# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No.: 22-mc-20

Cases Pending in the U.S. District Court for the District of Columbia
*Strzok v. Garland ,et al.*, 1:19-CV-2367-ABJ (D.D.C.)
*Page v. DOJ, et al.*, 1:19-cv-03675-TSC (D.D.C)

|  |  |
|---|---|
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION, | ) ) ) ) ) ) ) |
| Movants, | ) |
| v. | ) ) |
| PETER P. STRZOK | ) ) |
| IN RE SUBPOENA SERVED ON DONALD J.  TRUMP | ) ) ) ) |

## DEFENDANTS' NOTICE OF MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER

PLEASE TAKE NOTICE that Defendants in the cases *Strzok v. Garland, et al.*, 1:19-CV-2367-ABJ (D.D.C.), and *Page v. DOJ, et al.*, 1:19-cv-03675-TSC (D.D.C), hereby move pursuant to Federal Rules of Civil Procedure 26 and 45 to quash Mr. Strzok's deposition subpoena on former President Donald Trump issued in the above-referenced cases or to issue a protective order precluding the deposition at this time. The motion is based on the attached memorandum in support, exhibit thereto, and the record in both cases.

Dated: January 21, 2022                    Respectfully submitted,

                                    BRIAN D. NETTER
                                    Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Christopher M. Lynch*
MICHAEL J. GAFFNEY (D.C. Bar 1048531)
BRADLEY P. HUMPHREYS
(D.C. Bar 988057)
JOSHUA C. ABBUHL (D.C. Bar 1044782)
CHRISTOPHER M. LYNCH
(D.C. Bar 1049152)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4357
Email: Christopher.M.Lynch@usdoj.gov

*Counsel for Movants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No.: 22-mc-20

Cases Pending in the U.S. District Court for the District of Columbia
*Strzok v. Garland, et al.*, 1:19-CV-2367-ABJ (D.D.C.)
*Page v. DOJ, et al.*, 1:19-cv-03675-TSC (D.D.C)

|  |  |
|---|---|
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION, | ) ) ) ) ) ) ) |
| Movants, | ) ) |
| v. | ) ) |
| PETER P. STRZOK | ) ) |
| IN RE SUBPOENA SERVED ON DONALD J. TRUMP | ) ) ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER

Plaintiff Peter Strzok has subpoenaed former President Donald Trump for deposition testimony.[1] *See* Ex. A (deposition subpoena). But "there is a presumption against deposing high-ranking government officials" regarding official actions, *Kelley v. FBI*, No. CV 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015), which "hardly becomes inapplicable upon an official's departure from his office[.]" *In re United States*, 542 F. App'x 944, 948-49 (Fed. Cir. 2013). Such depositions cannot proceed unless the party seeking the testimony can make the

---

[1] The Department of Justice represents Defendants in the *Strzok v. Garland* and Page v. DOJ litigation (the Department of Justice, the FBI, and the Attorney General and FBI Director in their official capacities) and does not represent the former President in his personal capacity.

weighty showing that the sitting or former official possesses directly relevant information that cannot be obtained from other sources.

Defendants recognize that Mr. Strzok has alleged, "[u]pon information and belief," that "President Trump directly and indirectly pressured FBI Director Wray and then-Attorney General Sessions to fire Special Agent Strzok when his text messages critical of the President were first disclosed."[2] Compl. ¶ 45, ECF No. 1.[3] It may be, therefore, that communications between the former President and other federal officials will ultimately be relevant to Plaintiff's case, if Plaintiff can establish that those communications had an effect on those other officials' decisions. But it does not follow that Mr. Strzok should be permitted to take the deposition of former President Trump, who is not a party to the case, *first*. Discovery may reveal, for example, that even if the officials directly responsible for Mr. Strzok's firing were aware of communications from then-President Trump, they were not influenced by those communications. Under these circumstances, it is too soon to assess whether deposition testimony from the former President is truly needed, so the Court should quash the subpoena (without prejudice to renewal at a later juncture) or issue a protective order precluding the deposition at this stage of the proceedings.[4]

---

[2] Neither the disposition of this motion nor the disposition of this case requires the Court to opine on the appropriateness of the former President's conduct. In similar fashion, this memorandum should not be construed as a defense of that conduct.

[3] Unless otherwise noted, citations to the docket are to the docket in *Strzok v. Garland, et al.*, 1:19-CV-2367-ABJ (D.D.C.).

[4] The Southern District of New York is the proper venue for this motion because the place of compliance for the subpoena is in this district. Fed. R. Civ. P. 45(d)(1); *see* Ex. A. Defendants anticipate filing a motion to transfer this motion to the docket of Judge Amy Berman Jackson in the U.S. District Court for the District of Columbia because that Court has presided over the underlying *Strzok v. Garland* litigation since 2019. *See* Fed. R. Civ. P. 45(f).

## BACKGROUND

In 2019, Plaintiff Peter Strzok filed suit against the Department of Justice, Attorney General William Barr,[5] the FBI, and FBI Director Christopher Wray. Compl., ECF No. 1. The complaint concerns events that largely played out in public view. In 2017, on the decision of then-Deputy Attorney General Rod Rosenstein, the Department of Justice made a public disclosure of text messages exchanged between Mr. Strzok and Lisa Page. *See* Rosenstein Decl. ¶ 17, ECF No. 38-1. Mr. Strzok alleges that the disclosure violated the Privacy Act. Compl. ¶¶ 54, 62, ECF No. 1. In 2018, Mr. Strzok was removed from the FBI by then-Deputy Director David Bowdich. Mr. Strzok alleges that his termination violated his rights under the First and Fifth Amendments to the Constitution. Compl. ¶ 3, ECF No. 1; *see id.* ¶ 37.

The former President is not a party to this action, and the Complaint does not allege that he was the decision maker who caused the release of the text messages or the termination of Mr. Strzok's employment. To be sure, Mr. Strzok alleges that the former President publicly targeted him and that the actions of officials within the Department of Justice were influenced by the former President's antipathy for Mr. Strzok. In particular, Mr. Strzok alleges that "President Trump directly and indirectly pressured FBI Director Wray and then-Attorney General Sessions to fire Special Agent Strzok when his text messages critical of the President were first disclosed," citing news reports about White House meetings. Compl. ¶ 45. He further cites public tweets and statements made by former President Trump during his presidency that were "hostile" to Mr. Strzok, including one in which the former President said Mr. Strzok "should have been fired a long time ago." *Id.* ¶¶ 46-47. Mr. Strzok claims that "[b]ut for the intervention of the President and his

---

[5] The Attorney General was sued in his official capacity and has been substituted by the current incumbent of the office by operation of Fed. R. Civ. P. 25(d).

political allies and their insistence on punishing Mr. Strzok for the content of his protected speech," the FBI would not have terminated him. *Id*. ¶ 48.

Discovery in Mr. Strzok's case is ongoing.[6] *See, e.g.*, Minute Order of November 4, 2021; *see also* Joint Report Regarding Discovery Deadlines, ECF No. 70. The government began producing documents in February 2021, and Defendants have produced over 14,000 pages of documents to date. All parties are continuing to produce documents, and fact discovery is currently set to close on March 1, 2022. *See* Minute Order of Nov. 4, 2021.

On or about Friday, November 26, 2021, counsel for Mr. Strzok advised counsel for Defendants that they had served former President Trump with the instant subpoena, which listed a deposition date of January 6, 2022. The parties subsequently agreed that a motion to quash or for a protective order could be filed on or before January 21, 2022. At the time Mr. Strzok issued the subpoena, he and Ms. Page had yet to notice any other depositions in the case. As of the date of this filing, neither Mr. Strzok nor Ms. Page has taken a single deposition; former President Trump's deposition would be the first. Plaintiffs have now requested three other depositions of individuals; they have not noticed any depositions under Fed. R. Civ. P. 30(b)(6).

## LEGAL STANDARD

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery[]" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or

---

[6] Mr. Strzok's case has been consolidated for purposes of discovery with Ms. Page's case, which asserts a single claim that the December 12, 2017, disclosure of text messages between her and Mr. Strzok violated the Privacy Act. *Page v. U.S. Dep't of Justice*, No. 1:19-cv-03675 (D.D.C.), Compl. ¶ 71, ECF No. 1; *see id*. ¶ 89. While Defendants understand that the subpoena at issue was issued by counsel for Mr. Strzok, the arguments herein would also apply to Ms. Page to the extent she seeks to join the subpoena.

discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1). "Trial courts have broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 409 (D.D.C. 2018).

Under Rule 45, a court "*must* quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter . . . ; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). While the burden of establishing that a subpoena must be quashed typically falls on the movant, that burden is reversed where a party seeks testimony of a high-level government official. *See, e.g.*, *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant[]"); *In re United States (Holder),* 197 F.3d 310, 316 (8th Cir. 1999) ("Lee has not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder.").

## ARGUMENT

### I.   MR. STRZOK HAS NOT DEMONSTRATED THAT THE DEPOSITION OF A FORMER PRESIDENT IS WARRANTED AT THIS STAGE OF DISCOVERY.

"[T]here is a presumption against deposing high-ranking government officials." *Kelley*, 2015 WL 13648073, at *1 (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)); *see also Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). As an application of that presumption, which is sometimes termed the "apex doctrine," "high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see also Lederman*, 731 F.3d at 203 ("We now hold that, to

depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means."); *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) (same).

The apex doctrine applies with particular force when an individual seeks testimony about official acts from a sitting or former President. "History records less than a dozen instances of testimony of Presidents of the United States in judicial or congressional proceedings in two hundred years of American history." *United States v. Poindexter*, 732 F. Supp. 142, 144 (D.D.C. 1990). Thus, courts have recognized that "a subpoena to an incumbent or a former President should be scrutinized with a sharper eye and held to a higher standard than one to an ordinary citizen." *Id.* at 147; *accord Halperin v. Kissinger*, 401 F. Supp. 272, 274 (D.D.C. 1975) ("[A] former president should not be subjected to endless subpoenas and depositions concerning actions taken during his Administration.").

The apex doctrine serves several purposes: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials to perform their tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (internal citations and quotations omitted); *see also In re United States (Reno)*, 197 F.3d 310, 313-14 (8th Cir. 1999); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *United States v. Morgan*, 313 U.S. 409, 422 (1941). While the second concern may not apply to former officials, the other two considerations continue to apply after an official leaves office, and numerous courts have applied the apex doctrine to former

officials. *See, e.g.*, *Newman*, 531 F. Supp. 3d at 188; *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015)); *see also Moriah*, 72 F. Supp. 3d at 440 ("This doctrine applies to both current and former high-ranking officials.").

In sum, a long line of authority holds when a party in civil litigation seeks discovery from the President or a former President, the district court must hold the plaintiff to a heightened standard of necessity and relevance. This does not necessarily mean that a plaintiff will never be able to take the deposition of a former President. But it does mean that the heightened standard can be met only after a plaintiff has *first* exhausted alternative sources of non-privileged discovery and—having done so—*then* demonstrates that the requests are limited to personal knowledge that cannot otherwise be obtained. *See Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *see also Lederman*, 731 F.3d at 203; *Alexander*, 186 F.R.D. at 4.  This information must be first-hand knowledge related to the underlying claim being litigated that cannot be obtained elsewhere. *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *see also Bogan v. City of Boston*, 489 F.3d 417, 423-25 (1st Cir. 2007). At this stage of the proceedings, Mr. Strzok has not made such a showing.

### a. Mr. Strzok Has Not Exhausted Potential Alternatives for the Desired Discovery.

First, Mr. Strzok has not attempted to exhaust potential alternatives for the desired discovery, a prerequisite to making the showing that a high-level official has information that "cannot be obtained elsewhere." *Alexander*, 186 F.R.D. at 4; *accord Cheney*, 544 F.3d at 314; *Simplex*, 766 F.2d at 586.

On this requirement, the decision in *Kelley* from the court overseeing the underlying litigation in this case is instructive. In *Kelley*, the plaintiffs sought to depose then-Secretary of Homeland Security Jeh Johnson in conjunction with claims that personal information had wrongly

7

been leaked to the press, in violation of the Privacy Act. The court reasoned that, even if Secretary Johnson had personal knowledge, the subpoena for his testimony needed to be quashed because the plaintiffs had not exhausted alternative sources of the desired information:

> Since there is no dispute that the sitting Secretary of the Department of Homeland Security is a high level official to whom the doctrine developed . . . would apply, and since the plaintiffs are seeking to inquire into potential leaks to members of the press—not Secretary Johnson's decision making as a government official—the question to be decided is whether plaintiffs have shown that this witness has personal knowledge of relevant and necessary information that cannot be obtained elsewhere. On those points, the record is extremely thin. While plaintiffs may have grounds to believe that this witness has the requisite personal knowledge, they have not yet established that they cannot obtain the information he may possess elsewhere. Therefore, defendants' motion to quash will be granted at this time.

*Kelley*, 2015 WL 13648073, at *2 (citation omitted).

So too, here. Mr. Strzok subpoenaed the former President before taking, or even noticing, any depositions in this case. He has not deposed the officials who made the decisions about which he complains. Nor has he deposed the various subordinate officials who advised or consulted with the decision makers. *See, e.g.*, Rosenstein Decl., ECF No. 38-1 (describing in detail discussions in which Mr. Rosenstein engaged with a variety of officials before authorizing the release of Mr. Strzok and Ms. Page's text messages); August 9, 2018 Letter from David Bowdich to Peter Strzok, ECF No. 30-6 ("I concur with [Assistant Director Candace Will's] conclusion that [Mr. Strzok's] offenses are substantiated."); *see also* August 8, 2018 Letter from Candace Will to Peter Strzok, ECF No. 30-5. And while Mr. Strzok has served interrogatories, requests for admission, and requests for production on Defendants, he cannot meet his burden to show exhaustion by referencing those requests, because little if any of the discovery has been directed at the putative participation of the former President in the relevant decisions. Instead of taking these required steps before seeking the former President's deposition, Mr. Strzok seeks to front-load what is supposed to be the last resort.

This case thus stands in marked distinction to *Halperin*, in which a court permitted the deposition of former President Nixon. There, "[m]ore than twenty witnesses ha[d] been deposed." 401 F. Supp. at 275. The former President had "on several occasions . . . personally accepted responsibility for the . . . program challenged by plaintiffs" and was "uniquely capable of clarifying" certain of the issues that remained unclear. *Id.* Plaintiffs cannot make any parallel showing on the record here.

### b. Mr. Strzok Has Not Shown that the Former President Has Unique First-Hand Knowledge Related to the Claims.

As in *Kelley*, Plaintiffs' failure to exhaust alternative sources of information means that they should not be permitted to depose the former President at this juncture. In the alternative, based on the current record, Mr. Strzok has not demonstrated that the former President "has unique first-hand knowledge related to the litigated claims." *Lederman*, 731 F.3d at 203. As discussed above, Mr. Strzok does not allege that the former President made either of the two decisions at issue in this case. Rather, he challenges decisions made by then-Deputy Attorney General Rosenstein and then-Deputy Director David Bowdich. To the extent Mr. Rosenstein and Mr. Bowdich engaged in unprivileged communications with former President Trump, those communications can be probed through discovery directed at Mr. Rosenstein and Mr. Bowdich.

Upon exhausting alternative sources of information, Plaintiffs would need to demonstrate that former President Trump possessed relevant information that they could not elsewhere obtain. It is not clear at this stage whether any such information will exist in the future, but it surely does not exist now.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request a protective order precluding former President Trump's deposition and/or that the subpoena for former President Trump's deposition be quashed.

Dated: January 21, 2022                     Respectfully submitted,

                                            BRIAN D. NETTER
                                            Deputy Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Branch Director

                                            CHRISTOPHER R. HALL
                                            Assistant Branch Director

                                            */s/ Christopher M. Lynch*
                                            MICHAEL J. GAFFNEY (D.C. Bar 1048531)
                                            BRADLEY P. HUMPHREYS
                                            (D.C. Bar 988057)
                                            JOSHUA C. ABBUHL (D.C. Bar 1044782)
                                            CHRISTOPHER M. LYNCH
                                            (D.C. Bar 1049152)
                                            Trial Attorneys, U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W.
                                            Washington, D.C. 20005
                                            Tel.: (202) 353-4357
                                            Email: Christopher.M.Lynch@usdoj.gov

                                            *Counsel for Movants*