IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION, <br><br> Movants, <br> v. <br><br> PETER P. STRZOK <br><br> IN RE SUBPOENA SERVED ON DONALD J. TRUMP | Case No.: 1:22-mc-27-ABJ |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER

In his effort to defend his subpoena to former President Trump, Peter Strzok emphasizes repeatedly that former President Trump is the only person who can attest to "his state of mind" when making statements about Mr. Strzok. Opposition to Motion to Quash or for Protective Order ("Opp.") at 2, 10, 12, ECF No. 11. That may be true, but it is also beside the point. Because former President Trump did not remove Mr. Strzok and did not release the text messages at issue in this case, there is no need to probe the former President's intentions. Even if former President Trump aspired to tarnish Mr. Strzok's reputation and to induce his separation from the FBI, it would matter only if the *decision maker* shared or sought to further that aspiration.

Mr. Strzok thus cannot satisfy the operative legal standard for deposing high-ranking government officials: that "th[e] witness has personal knowledge of relevant and necessary information that cannot be obtained elsewhere." *Kelley v. FBI*, No. CV 13-0825 (ABJ), 2015 WL

13648073, at *1, *2 (D.D.C. July 16, 2015); *see Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."). No such circumstances are present.

Here, it is settled that the decision to remove Mr. Strzok from the FBI was made by then-Deputy Director David Bowdich. Mr. Strzok is free to depose Mr. Bowdich and the other FBI officials who were involved in the removal decision. But on the current record, Mr. Strzok offers nothing—no documents and no testimony—to support a finding that the former President possesses unique knowledge of relevant facts. Accordingly, on this record, a deposition would be premature.

**ARGUMENT**

**I.   MR. STRZOK HAS FAILED TO MEET THE HIGH BAR REQUIRED TO TAKE THE DEPOSITION OF A FORMER PRESIDENT**

In his opposition, Mr. Strzok asks the Court to treat his subpoena to take the deposition of the former President of the United States as a routine civil discovery request. *See* Opp. at 7. It is not. As set forth in Defendants' opening brief, this Court and nearly every Circuit Court of Appeals have recognized that district courts should rarely compel the attendance of a high-ranking official in a judicial proceeding. *See* Def's Mem. of Law In Support of Mot to Quash Subpoena or for Protective Order at 5-7 ("Mem."), ECF No. 2; *see also, e.g., Kelley*, 2015 WL 13648073, at *1; *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013); *In re United States (Jackson)*, 624 F.3d 1368, 1372-73, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex*, 766 F.2d at 586-87; *Peoples v. USDA*, 427 F.2d 561, 567 (D.C.

Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968); *see generally United States v. Morgan*, 313 U.S. 409, 422 (1941). Indeed, courts of appeals have routinely granted the extraordinary remedy of mandamus to prevent such depositions, including those of former officials. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 692; *In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020); *In re United States (Vilsack)*, No. 14-5146, 2014 U.S. App LEXIS 14134, at *1-2 (D.C. Cir. July 24, 2014).

Pursuant to the well-established doctrine regarding depositions of apex officials, Mr. Strzok must demonstrate, at a minimum, "that [former President Trump] has personal knowledge of relevant and necessary information that cannot be obtained elsewhere" in order to take the former President's deposition. *Kelley*, 2015 WL 13648073, at *1 (citing *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998)). Indeed, this Court in *Kelley* seemed to suggest that an even higher standard applies where an "official is being asked to testify about the deliberative process relevant to his official duties," *id*. at 1-2, which Mr. Strzok arguably seeks to do in deposing former President Trump about his "state of mind" related to the "actions he took to influence the outcome of the FBI's disciplinary process." Opp. at 2.

Mr. Strzok suggests that the rationales for the apex doctrine somehow do not apply to former President Trump. He is wrong. In contrast to Mr. Strzok's assessment of the weighty concerns behind the doctrine, courts recognize that subjecting high-level executive branch officials to oral testimony without a strong justification would raise serious separation of powers concerns and threaten the integrity of a coequal branch of government. *See In re U.S. Dep't of Educ.*, 25 F.4th at 700, 702 (discussing *Morgan*, 313 U.S. at 422).

Mr. Strzok also gives short shrift to the concern that without a strong presumption against subjecting incumbent and former high-level government officials to testify, those officials' time would be consumed by plaintiffs seeking their deposition for leverage. But Mr. Strzok's disagreement with the numerous courts that have concluded that the doctrine applies to former officials does not diminish the weighty concerns underlying those decisions. Indeed, since Defendants' opening brief, the Ninth Circuit has emphasized that this reasoning continues to apply to former officials. *In re U.S. Dep't of Educ.*, 25 F.4th at 705 ("The threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties while in office. If allowed the minute cabinet secretaries leave office, overwhelming and unnecessary discovery could also discourage them from taking that office in the first place or leaving office when there is controversy."). As but one example, the court in *United States v. Newman*, 531 F. Supp. 3d 181, 189 (D.D.C. 2021), similarly issued a protective order precluding a deposition of the former President in connection with another personnel-related dispute.

Mr. Strzok also attempts to distinguish some of the cases that hold uniformly that depositions of high-level government officials are strongly discouraged, but all he does is demonstrate the wide breadth of circumstances in which this well-established rule applies. *See* Opp. at 8, 14-15. As these cases illustrate, this rule applies whenever a party seeks the deposition of a sufficiently high-level incumbent or former official. There can be no dispute that former President Trump was of a sufficiently high-level office to qualify.

    **A.**    **Mr. Strzok Has Failed to Exhaust Potential Alternatives for the Desired Discovery**

Defendants' opening brief demonstrated that Mr. Strzok has not exhausted potential alternatives before taking the former President's deposition. Mem. at 7-9. In opposition, Mr. Strzok

points to statements made by former President Trump and suggests that they indicate that pressure from former President Trump is the only plausible reason for Mr. Strzok's removal. On that basis, Mr. Strzok says he is entitled to take former President Trump's deposition now.

But Mr. Strzok's assertions find no support in the factual record, including the tens of thousands of pages already produced thus far. They also ignore the events leading up to Mr. Bowdich's removal decision, including the Special Counsel's decision to have Mr. Strzok reassigned from the Russia investigation immediately upon learning of the text messages, the Office of the Inspector General's referral of Mr. Strzok to the FBI for discipline, career FBI Office of Professional Responsibility ("OPR") unit head Jessica Loreto's recommendation that Mr. Strzok be removed, and OPR Assistant Director Candice Will's finding that "[t]he nature and scope of [Mr. Strzok's] misconduct certainly warrants dismissal." Aug. 8, 2018 Letter from Candice Will to Peter P. Strzok II at 23, *Strzok v. Garland*, 1:19-CV-2367-ABJ (D.D.C.), ECF Nos. 30-1, 30-5.

The record at this juncture therefore offers no basis to deviate from what the law demands, namely, to require Mr. Strzok first to exhaust alternatives for the discovery he seeks, including taking the deposition of Mr. Bowdich as well as those individuals with knowledge relevant to the removal-related claims. However, to date, Mr. Strzok has not noticed the depositions of Ms. Loreto or Ms. Will, and he has not yet taken the deposition of Mr. Bowdich, despite apparently serving a deposition subpoena on Mr. Bowdich sometime in late 2021.[1] And he has made no showing that

---

[1] Mr. Bowdich has retained private counsel and is not represented in his individual capacity by counsel for Defendants. Defendants understand that Plaintiffs have engaged directly with his counsel in connection with their subpoenas of Mr. Bowdich, including receiving documents from him directly. While Mr. Strzok complains in his Opposition about the timing of both this motion and the pace of other discovery in this case, these complaints are both irrelevant and unfounded. Regarding discovery, the reason Mr. Strzok has chosen not to take these depositions yet is beside the point; what matters is that he must do so before he can depose the former President. Nor is Mr.

former President Trump was involved in those officials' decisionmaking process in any way. (Indeed, Mr. Strzok points to former President Trump's statements complaining that Mr. Strzok had not been fired months before Mr. Strzok's removal, suggesting that the FBI followed its regular disciplinary processes and drew its own conclusion at the end of that process.) Depositions of Mr. Bowdich and the other officials who participated in the decision to remove Mr. Strzok would be less restrictive than the deposition of former President Trump, and as such the law of this Circuit requires that they come before Mr. Strzok can make a showing that he is entitled to former President Trump's deposition. *See, e.g., In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).

Depositions of Mr. Bowdich, Ms. Will, and Ms. Loreto are also poised to develop the record on the relevant question of what actually occurred in Mr. Strzok's removal proceedings. Those depositions are necessary prerequisites to establishing the relevance, if any, of former President Trump's testimony. *See infra* Part I.B. Even under Mr. Strzok's theory, former President Trump's conduct and state of mind have no relevance unless they ultimately influenced Mr. Bowdich. Mr. Strzok argues that to prove discrimination, the putative "influencing official" (*i.e.,* former President Trump) must have "played a meaningful role in the decisionmaking process" regarding his removal. Opp. at 8, 12 (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d

---

Strzok's recounting correct. Plaintiffs claimed in September 2021 that they were ready to take depositions. But in October 2021, they withdrew their deposition requests and served additional burdensome discovery on Defendants, including 18 interrogatories and 29 requests for admission. These requests constituted more than double the number of interrogatories they had previously propounded in the case and the only requests for admission they have propounded thus far. Plaintiffs also served nine requests for production on Defendants since October 2021 and added more than a dozen requested document custodians in December 2021. As for the filing of this motion, the exhibits Mr. Strzok filed make clear that (a) Plaintiffs initially failed to perfect service of the subpoena on Mr. Trump; (b) Defendants timely indicated they needed time to decide how to proceed with respect to this subpoena; and (c) Mr. Strzok and his counsel agreed to the timeline requested by Defendants, in the process making clear that they were aware that a protective order motion was the likely response. *See* Opp. at Ex. D.

267, 272 (2d Cir. 2016)). But Mr. Strzok has made no showing that former President Trump played *any* role in Mr. Bowdich's decisionmaking process—which followed a disciplinary referral from the Inspector General, a recommendation of removal from the Office of Professional Responsibility, and a recognition that Mr. Strzok's conduct "certainly warrants dismissal" from the head of the Office of Professional Responsibility—let alone a "meaningful" one. Nor has Mr. Strzok provided any reason why he cannot first ask Mr. Bowdich whether he was in fact influenced by former President Trump's "pressure campaign," which he concedes is part of establishing his First Amendment claim. Opp. at 11-12.

Mr. Strzok also contends that the Court should not require him to exhaust alternate means before taking former President Trump's deposition because he claims former President Trump "has personal knowledge of facts central to the claims in the case," relying on analysis from a district court case in the Southern District of New York. *See* Opp. at 8-9. But Mr. Strzok's contention contravenes the law in this Circuit. As the Court explained in quashing the subpoena at issue in *Kelley*: "While plaintiffs may have grounds to believe that this witness has the requisite personal knowledge, they have not yet established that they cannot obtain the information he may possess elsewhere." 2015 WL 13648073, at *2; *cf.* Opp. at 9 ("when a court finds that the relevant government official 'has unique first-hand knowledge related to the litigated claims, *it need not make a separate finding that the necessary information cannot be obtained through other, less burdensome or intrusive means*.'" (quoting *In re Terrorist Attacks on Sept. 11, 2001*, Case No. 03-MDL-01570 (GBD)(SN), 2020 WL 8611024, at *14 (S.D.N.Y. Aug. 27, 2020))). The situation here is exactly the same.

Mr. Strzok also misunderstands the New York court's point. It did not say that a high-level government official need only have relevant knowledge to overcome the apex doctrine, which

7

would amount to no meaningful protection for high-level officials at all. Rather, that court simply indicated that, once a party has established that a deponent has "unique" information—that is, information "that cannot be obtained elsewhere"—the court need not separately conclude that there are less intrusive means (e.g. written interrogatories) than a deposition to obtain it. *Cf. Judicial Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016 WL 10770466, at *6 (D.D.C. Aug. 19, 2016) (authorizing interrogatories of Secretary of State Clinton because while "her counsel acknowledged at oral argument[ that] Secretary Clinton has unique first-hand knowledge" warranting her testimony, "Judicial Watch has failed to demonstrate that it cannot obtain the discovery it seeks through other, less burdensome or intrusive means such as interrogatories."). As discussed below, Mr. Strzok has failed to make that necessary showing.

**B.     Mr. Strzok Has Not Shown that the Former President Has Unique First-Hand Knowledge Related to the Claims**

In addition to failing to exhaust alternative means of establishing that former President Trump improperly influenced the result of his disciplinary proceedings, Mr. Strzok has also failed to establish that former President Trump has unique personal knowledge *relevant* to the case.

The only knowledge of former President Trump's "that cannot be obtained elsewhere" identified by Mr. Strzok in his opposition is former President Trump's "state of mind" and "motivations," *i.e.*, former President Trump's intent in making certain statements. *Kelley*, 2015 WL 13648073, at *2; Opp. at 2, 8, 12. But, as explained above, former President Trump's state of mind and intentions are not relevant to Mr. Strzok's claims. Whether or not former President Trump *intended* to influence Mr. Bowdich is immaterial; the only question relevant to Mr. Strzok's claims is whether or not former President Trump (whatever he intended) *did* influence Mr. Bowdich. But that is a question properly addressed only to Mr. Bowdich, or others directly involved in the removal process.

Indeed, although Mr. Strzok has conducted two depositions and has received tens of thousands of pages collected from searches from over 60 custodians in response to requests for production, responses to 25 interrogatories, and responses to 29 requests for admission in this case, Mr. Strzok has been able to point to only *one* document to back up his contention that he was removed from the FBI based on former President Trump's improper influence: a single page of Mr. Bowdich's notes indicating that Mr. Bowdich was aware of certain of former President Trump's widely publicized public statements about Mr. Strzok. Opp. Ex. B. But this does not justify former President Trump's deposition at this juncture or make examination of *former President Trump's* intent or "state of mind" relevant to this case. At most, it is relevant to *Mr. Bowdich's* state of mind and justifies Mr. Strzok asking Mr. Bowdich about the page at Mr. Bowdich's deposition.

Mr. Strzok also suggests in passing that former President Trump's "public statements [are] relevant to Mr. Strzok's damages under his Privacy Act claim" on the theory that they "amplified the harm" Mr. Strzok claims to have experienced. Opp. at 6. But assuming *arguendo* that this is so, it does not justify former President Trump's deposition now, either: As with Mr. Strzok's removal-related claims, Mr. Strzok's argument is essentially that former President Trump's *public statements* had an effect on *others*, and so discovery, if needed, should be directed at the others first. And while Mr. Strzok notes that his complaint alleges that "someone at the White House was used as a conduit to leak information about the texts to the press before [DOJ disclosed them to the press]," *Id.* at 11, he has taken no discovery to date to ascertain who that someone was, or even to determine whether this allegation—which was based "[o]n information and belief," Compl. ¶ 59—has any factual support. It would clearly violate the apex doctrine to begin with the former

President's deposition as a way to explore the speculative theory that someone at the White House was responsible for this alleged leak.

Mr. Strzok cites a number of cases in which high-level officials were ostensibly subjected to depositions to support his argument that this Court should authorize former President Trump's deposition. None is apposite. This case is wholly different from *Halperin v. Kissinger*, 401 F. Supp. 272 (D.D.C. 1975), and *Clinton v. Jones*, 520 U.S. 681 (1997), both cited by Mr. Strzok. In *Halperin*, former President Nixon was required to provide a deposition only after "[m]ore than twenty witnesses ha[d] been deposed" and there was no dispute that Mr. Nixon was the official responsible for the challenged acts. 401 F. Supp. at 275. Here, by contrast, Mr. Strzok has yet to take the deposition of *any* witness on the subject of his removal claims and has conceded that former President Trump was *not* the decision-maker for his removal. And in *Clinton v. Jones*, former President Clinton was a party to the case, which involved Mr. Clinton's own alleged personal conduct, not the actions of government officials. 520 U.S. at 685.

Nor are *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6 (D.D.C. 2018), and *Judicial Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016 WL 10770466 (D.D.C. Aug. 19, 2016), cited by Mr. Strzok, of help here. *See* Opp. at 12-13. *Zimmerman* does not involve a government official at all, and both cases involve the deposition of the individual who directly made the decision at issue in the case. They thus have no bearing on the issues involving former President Trump.[2]

---

[2] *Trump Old Post Office LLC v. Topo Atrio LLC*, No. 2015 CA 006624 B, 2016 WL 11478086 (D.C. Super Dec. 14 2016) is even farther afield.  While Mr. Strzok describes the case as "ordering Trump's deposition over apex doctrine objections," he fails to note (1) that the case predated former President Trump's time in federal office and (2) that the DC court rejected the premise that the apex doctrine applied under District of Columbia law.  Opp. at 13; *see Trump Old Post Office LLC,* 2016 WL 11478086*.* at \*2 (noting "[w]hile this Court may consider the factors under the apex doctrine, this jurisdiction has neither adopted nor otherwise addressed it" and applying general protective order standard under D.C. local law). Here, of course, the Court is bound by the law of this Circuit that has adopted the apex doctrine.

10

Moreover, Mr. Strzok misrepresents the holding of *Judicial Watch*. The court in that case did not "authorize the deposition of then-Secretary of State Hillary Clinton" as Mr. Strzok represents, nor was there any dispute about whether Secretary Clinton had "unique personal knowledge" necessary to the case. Opp. at 13; *Judicial Watch*, 2016 WL 10770466, at *6 ("Clearly, and as her counsel acknowledged at oral argument, Secretary Clinton has unique first-hand knowledge of the purpose for the creation and operation of the clintonemail.com system for State Department business."). Rather, the court authorized interrogatories of Secretary Clinton, because it found that "Judicial Watch has failed to demonstrate that it cannot obtain the discovery it seeks through other, less burdensome or intrusive means such as interrogatories." *Id. Judicial Watch* thus militates *against* permitting former President Trump's deposition here.

Nor is it sufficient to argue, as Mr. Strzok does, that former President Trump's deposition is inherently necessary to test the credibility of any statement Mr. Bowdich may offer about former President Trump's influence or lack thereof at some future deposition. *See* Opp. at 12 n.3. As Mr. Bowdich has not been deposed, this speculation about what he may say puts the cart before the horse. And, in any event, Mr. Strzok offers no basis to conclude that Mr. Trump had direct knowledge about Mr. Bowdich's intentions.

Regardless, Mr. Strzok may of course offer former President Trump's public statements to support his arguments, subject to the Federal Rules of Evidence. But Mr. Strzok does not need former President Trump's testimony to make an argument based on former President Trump's public statements, because the public nature of the statements by definition means they can be "obtained elsewhere." Absent some specific evidence that former President Trump participated in Mr. Bowdich's decisionmaking process, there is no basis to permit former President Trump's deposition.

11

Towards the end of his brief, Mr. Strzok observes that "Presidents are not kings, and [former President Trump] is not President," and that "Presidents and former Presidents are not immune from deposition . . ." Opp. at 17 (quoting *Trump v. Thompson*, No. 21-cv-2769 (TSC), 2021 WL 5218398, at *8 (D.D.C. Nov. 9, 2021)). But as the Ninth Circuit recently explained in issuing a writ of mandamus precluding the deposition of a former cabinet secretary, "[t]he significant protection from depositions that [high-level government officials] enjoy does not mean that they are above the law"; it only means that they maintain "significant protection from depositions." *In re U.S. Dep't of Educ.*, 25 F.4th at 701.

## CONCLUSION

After taking depositions of those who were undisputedly involved in his removal process, Mr. Strzok may—or may not—develop a factual basis to take former President Trump's deposition. But he has failed to do so at this juncture. Accordingly, and for the reasons set forth in Defendants' opening brief and the foregoing reasons, Defendants respectfully request a protective order precluding former President Trump's deposition at this time and/or that the subpoena for former President Trump's deposition be quashed.

 Dated: April 11, 2022                              Respectfully submitted,

                                                    BRIAN D. NETTER
                                                    Deputy Assistant Attorney General

                                                    MARCIA BERMAN
                                                    Assistant Branch Director

                                                    CHRISTOPHER R. HALL
                                                    Assistant Branch Director

                                                    */s/ Christopher M. Lynch*
                                                    MICHAEL J. GAFFNEY (D.C. Bar 1048531)
                                                    BRADLEY P. HUMPHREYS
                                                    (D.C. Bar 988057)
                                                    CHRISTOPHER M. LYNCH

(D.C. Bar 1049152)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4357
Email: Christopher.M.Lynch@usdoj.gov

*Counsel for Movants*