**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|                Movants, | ) |
|      v. | )     Case No.: 1:22-mc-27-ABJ |
| PETER P. STRZOK | )<br>) |
| IN RE SUBPOENA SERVED ON DONALD J. TRUMP | )<br>)<br>)<br>) |

**DEFENDANTS' RESPONSE TO MR. STRZOK'S JUNE 15, 2022 NOTICE OF SUPPLEMENTAL DISCOVERY**

Mr. Strzok's June 15, 2022 Notice of Supplemental Discovery does not advance his extraordinary request to take former President Trump's deposition before he has taken the depositions of the relevant decision makers in his underlying case, which he has still, to this day, not done.

Mr. Strzok notifies the Court of two "recent developments." The first is that during the deposition of former Associate Deputy Attorney General Scott Schools on June 9, 2022, Defendants invoked the presidential communications privilege to prevent Mr. Schools from testifying about a conversation he had with former President Trump at a June 2018 meeting at the White House, at which Mr. Schools and other DOJ officials briefed the former President about the Inspector General's Midyear Exam Review report. Mr. Strzok argues that Defendants intend to prevent all testimony about any statements made by former President Trump behind closed doors

about Mr. Strzok's employment, and so he cannot in fact exhaust alternative avenues of obtaining information about such statements before deposing former President Trump, as Defendants have argued he must.

As an initial matter, Mr. Strzok has been on notice since March 31, 2022 that Defendants claimed the presidential communications privilege over communications with former President Trump at this very meeting. That was when Defendants claimed the presidential communications privilege over a document described to Mr. Strzok as "Outline prepared by Associate Deputy Attorney General Scott Schools in advance of briefing the President regarding contents of the Inspector General's June 14, 2018 report titled 'Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election.'"[1] Mr. Strzok did nothing to contest that privilege assertion from that time up to and including in his June 15 Notice. The President's actual communications are of course at the heart of the presidential communications privilege. *See, e.g., In re Sealed Case*, 121 F.3d 729, 744-46 (D.C. Cir. 1997); *CREW v. DHS*, 2008 WL 2872183 at *2-3 (D.D.C. July 22, 2008). And the same communications would or would not be privileged regardless of who is deposed about them, including former President Trump, so it is unclear how this "recent development" helps Mr. Strzok's case to depose former President Trump. Mr. Strzok's June 15 Notice parenthetically notes that the presidential communications privilege is "presumably subject to waiver by President Trump." June 15 Notice at 2. But the only thing he provides arguably in support of a waiver theory is a statement by former President Trump made "nearly contemporaneously with the mid-June meeting" that doesn't actually discuss that meeting. *Id.*

---

[1] *See also* Mot. to Quash at 9, ECF No. 2 at 11 ("To the extent Mr. Rosenstein and Mr. Bowdich engaged in *unprivileged* communications with former President Trump, those communications can be probed through discovery directed at Mr. Rosenstein and Mr. Bowdich.") (emphasis added).

More importantly, none of this is tied to the decision makers in this case, Mr. Bowdich and Mr. Rosenstein. No matter what former President Trump said about Mr. Strzok in private (or in public, for that matter), to Mr. Schools or anyone else, it only matters if it reached and influenced the decision makers. *See, e.g.*, Defs.' Reply at 1 ("Even if former President Trump aspired to tarnish Mr. Strzok's reputation or to induce his separation from the FBI, it would matter only if the *decision maker* shared or sought to further that aspiration."); *see also id*. at 6-7. For example, Mr. Schools testified at his deposition that he never spoke to Mr. Bowdich, FBI Director Chris Wray, or even Director Wray's staff about what happened at the June 2018 meeting. Schools Dep. Tr. 344:20-345:16. Mr. Strzok can ask Mr. Bowdich directly whether he learned about anything former President Trump said at that meeting and whether it influenced his decision to remove Mr. Strzok from the FBI, all without getting into the substance of presidential communications. But Mr. Strzok has yet to depose Mr. Bowdich, or Mr. Rosenstein. The only reason Mr. Strzok offers for wanting to depose former President Trump first, before either Mr. Bowdich or Mr. Rosenstein, is that "[c]onsidering Mr. Bowdich's importance as a witness, [Mr. Strzok's] strong preference is to take his deposition as near the close of fact discovery as possible." June 15 Notice at 3 n.2. That preference, however, must yield to the law of this Circuit that requires those depositions to precede any deposition of the former President. *See* Defs.' Mot. to Quash at 7; Defs' Reply at 4.

Defendants' position that Mr. Strzok needs to depose Mr. Bowdich before he may depose former President Trump is consistent with the second "recent development" that he apprises the Court of in his notice—Defendants' position that a deposition of Director Wray is also premature until Mr. Bowdich has been deposed. Defendants have consistently maintained that because the relevant decision maker regarding Mr. Strzok's removal is Mr. Bowdich, his deposition is necessary before the question of whether any agency-head-or-higher level official's deposition on

the same topic is appropriate. *See, e.g.*, ECF No. 2 at 11; ECF No. 15 at 8. That includes Director

Wray. There is nothing surprising or new about this position, which is fully consistent with the

requirements of the apex doctrine.

Dated: June 21, 2022                                 Respectfully submitted,

                                                    BRIAN D. NETTER
                                                    Deputy Assistant Attorney General

                                                    MARCIA BERMAN
                                                    Assistant Branch Director

                                                    CHRISTOPHER R. HALL
                                                    Assistant Branch Director

                                                    */s/ Christopher M. Lynch*
                                                    MICHAEL J. GAFFNEY
                                                    (D.C. Bar 1048531)
                                                    BRADLEY P. HUMPHREYS
                                                    (D.C. Bar 988057)
                                                    JOSHUA C. ABBUHL
                                                    (D.C. Bar 1044782)
                                                    CHRISTOPHER M. LYNCH
                                                    (D.C. Bar 1049152)
                                                    Trial Attorneys, U.S. Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, N.W.
                                                    Washington, D.C. 20005
                                                    Tel.: (202) 353-4357
                                                    Email: Christopher.M.Lynch@usdoj.gov

                                                    *Counsel for Movants*