# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER P. STRZOK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity, et al.,<br><br>　　　　Defendants. | Civil Action No. 19-2367 (ABJ) |
| LISA PAGE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 19-3675 (TSC) |
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION,<br><br>　　　　Movants,<br>　　v.<br><br>PETER P. STRZOK<br><br>IN RE SUBPOENA SERVED ON DONALD J. TRUMP | Case No.: 1:22-mc-27 (ABJ) |

### DEFENDANTS' RESPONSE TO PETER P. STRZOK'S SEPTEMBER 29, 2022 NOTICE LISTING AREAS OF INQUIRY FOR DEPOSITIONS AT ISSUE IN MOTIONS TO QUASH

Defendants submit this response to Mr. Strzok's September 29, 2022 Notice pursuant to the Court's August 10, 2022 Minute Order. As required by the Court's Order, Defendants have limited their discussion to the Presidential Communications Privilege and the Deliberative Process Privilege.[1]

In the responses below, Defendants follow the format established by Mr. Strzok in his Notice, which provided "topic areas and questions" that Mr. Strzok proposes to ask of former President Trump and Director Wray, if given the opportunity. Pl.'s Notice at 1. Per the Court's instruction, Defendants have endeavored to inform the Court as to the specific questions to which Defendants would object and instruct not to answer with respect to the Presidential Communications Privilege or the Deliberative Process Privilege. As a matter of process, and in the ordinary course, after the government objects to questioning on such grounds, the opposing party would decide whether to move to compel, whereupon the government would consult with the incumbent President respecting whether and to what extent he would perfect the assertion of privilege. Accordingly, Defendants understand the current briefing to serve the function of identifying where Defendants would raise such objections in the first instance, given the "presumptive privileged nature" of some possible answers to the proposed questioning, to preserve the President's ability to perfect the privilege. *Alexander v. FBI*, 186 F.R.D. 128, 136 (D.D.C.

---

[1] Defendants respectfully note their disagreement with Mr. Strzok's characterization of a number of statements in his Notice. Defendants are mindful, however, of the Court's order that neither Mr. Strzok's Notice nor the instant filing "may include any additional commentary with respect to relevance or the apex doctrine." Aug. 10, 2022 Minute Order. Accordingly, Defendants do not address those contentions here; Defendants will respond as necessary in their October 28, 2022 brief on the applicability of asserted privileges. Further, Defendants' summaries of the topic headings herein are for convenience only and are not intended to imply any concession that the descriptions accurately reflect events that occurred.

1

1998). *See also Protective Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 1, 1 (1996) (opinion of Reno, Att'y Gen.).

Moreover, to the extent Mr. Strzok would propose to ask, or actually ask, additional questions not specifically identified in Mr. Strzok's Notice—including follow-up or clarifying questions or sub-part questions—Defendants would, of course, need to evaluate those questions on a case-by-case basis to determine whether the Presidential Communications Privilege or the Deliberative Process Privilege may apply to any response. For example, while we indicate below that we would not assert the Presidential Communications Privilege to the proposed question of "whether [former President Trump] has any notes, memos, recordings or other memorialization" of an alleged presidential meeting, we would likely instruct the witness not to disclose the content of any such notes, etc., that document the former President's nonpublic communications with his close advisors to the extent it appears that such communications might have been offered as part of a process of presidential decision-making. We may also instruct the witness not to disclose the content of any such notes, etc. about topics that do not pertain to Mr. Strzok, pursuant to the Deliberative Process Privilege.

Finally, as discussed below, there may be instances—if either of their depositions were to proceed—in which the former President or Director Wray could respond without revealing privileged information, depending on their specific testimony. If that situation were to arise, Defendants would permit that testimony to proceed to the extent potentially privileged information would not be divulged.

A.     **Topics Proposed by Mr. Strzok for Inquiry of Mr. Trump**

**1.     "January 22, 2018 Meeting" and 2. "January 23, 2018 Meeting"**: Most of the questions under these headings propose to ask about nonpublic conversations of former President Trump

with his close advisors, some or all of which may have been in the service of presidential decision-making. Defendants therefore anticipate they would object and instruct the witness not to answer the specific questions included under these headings on the basis of the Presidential Communications Privilege, except for the proposed questions regarding former President Trump's demeanor during the alleged meetings or whether he has "any notes, memos, recordings or other memorialization" of the alleged meeting. Pl.'s Notice at 2. To the extent any of the questions are phrased so broadly as to cover pre-decisional executive branch deliberations that do not pertain to Mr. Strzok (e.g., "what action items he gave to them as a result of the meeting"), Defendants anticipate objecting and instructing the witness not to answer on the basis of the Deliberative Process Privilege.

Depending on the former President's testimony were a deposition to go forward, however, it may be possible for him to answer without revealing information as to which a privilege claim might be asserted. As with other witnesses, Defendants would permit the former President to answer in those circumstances. Defendants' September 29, 2022 filing, which addressed the depositions of former Deputy Attorney General Rod Rosenstein and former FBI Deputy Director David Bowdich, refers to several instances where those witnesses were permitted to answer questions that touched on meetings with former President Trump. ECF No. 90 at 2-4. *See also, e.g.*, Bowdich Dep. at 142:9-17 ███████████████

██████████████████████████████████

██████████████████████████████████

█████████████████; Rosenstein Dep. 366:5-18 ████████

██████████████████████████████████

3

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████); *id.* 369:19-370:15 (█

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

3. **"June 15, 2018 Meeting"**: Similarly, most of the questions under this heading propose to ask about nonpublic conversations of former President Trump with his close advisors, some or all of which may have been in the service of presidential decision-making. Defendants therefore anticipate they would object to, and instruct not to answer on the basis of the Presidential Communications Privilege and (to the extent the questions are about topics that do not pertain to Mr. Strzok) the Deliberative Process Privilege, the following questions: "what [former President Trump] recalls of that June 15 meeting, including whether any policy or other decisions were being deliberated during the meeting, and if so what they were . . . , what he learned about the IG report [at that meeting], [and] what questions if any he had about it." Pl.'s Notice at 3. Defendants anticipate they would object to, and instruct not to answer on the basis of the Presidential Communications Privilege, the following questions: "what if anything [former President Trump] said about Peter Strzok, including about Strzok's employment status and potential discipline, what if anything he was told about Strzok's likely discipline, whether he gave any other instructions or

expressed opinions about actions to be taken against Strzok, . . . whether he made any statements about the text messages or about Strzok more generally, such as that he engaged in 'treason,' had been 'disloyal,' was part of the 'deep state,' or about the consequences for the FBI, the Director, the Deputy Director, or others if Strzok was not fired. . . . why he made any such statements, what his goals and/or motivations were, . . . [and] whether any action items were issued." *Id.* at 3-4.

Defendants anticipate they would not object to the proposed question about what former President Trump's demeanor was like during the alleged June 15, 2018 meeting or whether there is "any memorialization of the meeting." *Id.* at 4

As noted above, it is possible that the former President's testimony in response to the questions identified under this topic would not reveal the substance of nonpublic communications of former President Trump with his close advisors. As with other witnesses, as illustrated by the testimony included in Defendants' September 29 filing and the other examples provided above, Defendants would permit the former President to answer to the extent it would not do so.

4. **"Communications between December 2, 2017 and June 15, 2018"**: Defendants anticipate they would object to, and instruct not to answer on the basis of the Presidential Communications Privilege, the following questions to protect any nonpublic communications between President Trump and his close advisors: "what if any communications [former President Trump] had [regarding Mr. Strzok] with anyone at DOJ or the FBI about his public statements, their meaning, and/or their intended effect," to the extent those DOJ or FBI personnel were sufficiently close advisors of the former President; and "whether the DOJ or FBI made any effort to persuade President Trump not to make false accusations against Mr. Strzok [in those communications], for example in response to President Trump's assertion that Mr. Strzok had

5

committed 'treason,' and how President Trump reacted to any such efforts," subject to the same caveat. *Id.* at 4.

Again, it is possible that the former President's answers to the questions identified under this topic would not reveal the substance of nonpublic communications of former President Trump with his close advisors that were connected to possible presidential decision. In that case, as with other witnesses, Defendants would permit the former President to answer to the extent they do not. Depending on how he came to acquire the information, the former President may, for example, be able to provide non-privileged answers to the questions of "how [he] first learned of Mr. Strzok and Ms. Page's text messages" and "whether he was aware that his purported supporters made death threats and/or engaged in other menacing actions against Strzok and/or Page and their families, and what efforts he made, if any, to curtail those types of actions." *Id*. In addition, Defendants would not object on the basis of either privilege to questions about former President Trump's public statements or about what he intended to accomplish by them.

5.      **"Communications between June 15, 2018 and August 10, 2018"**: Defendants anticipate they would object to, and instruct not to answer on the basis of the Presidential Communications Privilege, the following questions about former President Trump's nonpublic communications with his close advisors, some or all of which may have been in the service of presidential decision-making: "communications he had with anyone at DOJ and the FBI between those dates regarding Mr. Strzok," to the extent any such DOJ or FBI personnel were sufficiently close advisors of the former President; and "whether the DOJ or FBI ever informed him that its Office of Professional Responsibility decided not to fire Strzok, [and] how he reacted or would have reacted to that information," with the same caveat. *Id.* at 5. It is unclear whether a question about "what understandings other officials at the White House, DOJ, and FBI had about his likely

reaction and about his basis for any such understandings" would reveal the substance of presidential communications—because Defendants do not know the basis for those "understandings." *Id.* For that reason, Defendants cannot predict whether they would object on the basis of the Presidential Communications Privilege to that question.

Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to questions about former President Trump's public statements or about what he intended to accomplish by them.

6. **"Communications Following August 10, 2018"**: Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the questions identified under this topic, all of which relate to the former President's public statements.

7. **"Origins of the Disclosure to the Press of Text Messages"**: This topic proposes a single yes-or-no question—*i.e.*, whether former President Trump "ever learned the identity of the person who leaked the existence of Mr. Strzok and Ms. Page's text messages to the press in November or December 2017." Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to that question.

8. **"Retained Documents Relating to Strzok and/or Page"**: Defendants do not anticipate they would object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the questions under this heading, which do not on their face ask about nonpublic communications or deliberations of former President Trump while he was President.

B. **Topics Proposed by Mr. Strzok for Inquiry of Director Wray**

1. **"January 22, 2018 Meeting"**: Because Section B, ¶ 1 of Mr. Strzok's Notice incorporates "similar questions to those under Section A, ¶ 1," most of the questions under this

7

heading similarly propose to ask about nonpublic conversations of former President Trump with his close advisors, some or all of which may be connected to presidential decision-making, and Defendants incorporate their response to Section A, ¶ 1 above.

Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the additional questions of whether Director Wray "saw and/or responded to the news reports regarding that meeting" or questions about "any briefings regarding that meeting that he gave to any of his staff, including his Deputy Director, and what statements, if any, they made about the topics of the meeting," *id.*, except to the extent such testimony does not pertain to Mr. Strzok or would reveal the substance of nonpublic communications of former President Trump with his close advisors.

2. "**January 23, 2018 Recap from AG Sessions**":

Defendants anticipate they would object to, and instruct not to answer on the basis of the Presidential Communications Privilege, the questions "what then AG Jeff Sessions told [Director Wray] about any discussion he had with President Trump on January 23, 2018" and "what discussions he had with other FBI officials about the [alleged] Sessions/Trump meeting," to protect any nonpublic conversations of former President Trump with his close advisors connected to presidential decision-making. *Id.* at 6. However, as with other witnesses, Defendants would permit Director Wray to answer to the extent it would not reveal such potentially privileged information. *See, e.g.*, Defs' Sept. 29 filing; Bowdich Dep. at 142:9-17; Rosenstein Dep. at 366:5-18; *id.* 369:19-370:15.

Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the question of whether Director Wray "saw any news reports regarding [the alleged] meeting." Pl.'s Notice at 6.

8

3. **"June 15, 2018 Meeting"**: Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the question of whether Director Wray attended the alleged June 15 meeting. Defendants further incorporate their response to Section A, ¶ 3 above, regarding the same questions about this alleged meeting. Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the additional question "about any briefings he gave his staff, including his Deputy Director, about the June 15 meeting," *id.* at 6, except to the extent such testimony would reveal the substance of nonpublic communications of former President Trump with his close advisors.

4. **"Midyear Investigation Report and Response"**: Defendants would object to and instruct not to answer on the basis of the Deliberative Process Privilege the question under this heading, except to the extent such testimony relates specifically to the OIG's findings or conclusions regarding Mr. Strzok.

5. **"Statements that Disciplinary Process Would Follow Established Procedures and Wray Would Not Intervene"**: Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the questions under this heading.

6. **"Communications with Deputy Director Bowdich and Delegation of Authority re Strzok"**: Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the questions under this heading.

7. **"Communications with AG Sessions and/or DAG Rosenstein about Strzok"**: Defendants would not object on the basis of the Presidential Communications Privilege or the Deliberative Process Privilege to the questions under this heading.

9

Dated: October 18, 2022                    Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Christopher M. Lynch*
MICHAEL J. GAFFNEY
(D.C. Bar 1048531)
BRADLEY P. HUMPHREYS
(D.C. Bar 988057)
JOSHUA C. ABBUHL
(D.C. Bar 1044782)
CHRISTOPHER M. LYNCH
(D.C. Bar 1049152)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4357
Email: Christopher.M.Lynch@usdoj.gov

*Counsel for Defendants*